IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| AMANDA MICHEL, as parent and natural guardian of D.M., a minor, and AMANDA MICHEL, individually, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civ. No.: 3:20-cv-00246-TAV-HBG |
| UNION COUNTY BOARD OF EDUCATION; UNION COUNTY PUBLIC SCHOOLS; UNION COUNTY, TENNESSEE; JAMES E. CARTER, individually and officially as Director of Union County Board of Education; LARRY KERR, individually and officially as a teacher and head football coach of Union County High School; DEREK MARLOW, individually and officially as a teacher and football coach of Union County High School; and SHANE BROWN, individually and officially as a teacher and athletic director of Union County High School, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**DEFENDANTS UNION COUNTY BOARD OF EDUCATION, JAMES E. CARTER, LARRY KERR, DEREK MARLOW, AND SHANE BROWN'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b) and Local Rule 7.1(c), Defendants, Union County Board of Education (the "Board"), James E. Carter, Larry Kerr, Derek Marlow, and Shane Brown (collectively, the "Individual Defendants" and all Defendants are referred to collectively as "Defendants") file this Reply Brief in Support of their Motion to Dismiss Plaintiff's Complaint. The crux of Plaintiff's argument is "that a Section 1983 claim exists when, as here, a state actor places an injured student athlete in further risk of bodily harm by requiring him or her to continue practicing or competing." Response [Doc. 29] p. 12-13. No court in the Sixth Circuit has held that a "state created danger" exists under such a circumstance or anything close, a circumstance

better left to state tort law than a Constitutional violation. Rather, under Plaintiff's clearly articulated theory, it is far from "hyperbolic" to suggest that if under the facts set forth in Plaintiff's Complaint there is a violation of Due Process, then there would be "a substantive due process claim for any student participating in any school extracurricular activity, supplanting state tort law with federal constitutional law far beyond the intent of the Constitution." Brief [Doc. 25] p. 13. Indeed, the United States Court of Appeals for the Fourth Circuit made it clear that "the Due Process Clause of the United States Constitution does not impose a duty on municipalities to provide their students with a safe environment – whether on a 'playground,' 'football' field, or on a 'class field trip[].'" *Smith v. Sch. Bd. of Chesapeake*, 2019 U.S. Dist. LEXIS 108845 * 20, 2019 WL 2656204 (E.D. Va. June 27, 2019) (citing *Waybright v. Frederick County,* 528 F.3d 199, 208 (4th Cir.), cert. denied, 555 U.S. 1069, 129 S. Ct. 725, 172 L. Ed. 2d 725 (2008)). Plaintiff is unable to state a claim under Section 1983 and the Individual Defendants are further entitled to immunity from state tort claims under the Tennessee Governmental Tort Claims Act (TGTLA). Plaintiff's Complaint should be dismissed.

The injury allegedly suffered by D.M. on May 9, 2019 is indeed tragic. "[T]he Constitution [however] does not empower federal judges to remedy every situation we find 'heart-wrenching.'" *Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 928 (6th Cir. 2020). According to the Complaint [Doc. 1] and Plaintiff's Response [Doc. 29], D.M. was involved in a "helmet-to-helmet" collision during football practice. Sometime later, he asked to come out because "his head was hurting," what Plaintiff now describes as a "severe headache," a request granted allowing him to take his helmet off and get some water. After sitting out for a few minutes, D.M. claims Marlow, an assistant coach for the Union County High School football team, told D.M. to "get back out there" without evaluating D.M. further. "After a several more plays [sic], D.M.'s head began

hurting worse, and he collapsed on the field." Comp. ¶¶ 22-25, 27.[1]  There are no allegations in the Complaint or in Plaintiff's Response that D.M. suffered another hit to the head or any injury after returning to practice.

Plaintiff's entire complaint is that Marlow failed to comply with Tennessee state law and the Tennessee Secondary School Athletic Association (TSSAA) guidelines in responding to potential concussions and the Board failed to establish policies concerning student athlete concussions and never trained Marlow on what to do in such a situation.  Such allegations fail to come close to meeting the standard to support a Section 1983 claim for state created danger or interference with familial relationships.  Plaintiff's Complaint should be dismissed.

## ARGUMENT

As an initial matter, because "'[v]icarious liability is inapplicable to . . . § 1983 suits,' . . . a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Doe*, 954 F.3d at 934.  Accordingly, Plaintiff must plead and prove that each Individual Defendant "knew of a risk" to D.M. that he would suffer further injury by returning to football practice on May 9, 2019, "and responded to that risk in a way that society would find 'conscience shocking.'"  *Id.*  Plaintiff fails to make such a showing as to any Individual Defendant and does not even mention Defendants Brown and Kerr in her Response and neither Carter nor Brown were at the practice in question and neither has any direct involvement with the team.  As the Sixth Circuit has made clear, a failure to act cannot

---

[1] Defendants deny that D.M. ever returned to practice after he requested to sit out.  They maintain that they do have a statutory and TSSAA compliant concussion policy, including proper training of its coaches.  They further deny that any individual, including any Individual Defendant, took any action that contributed to or caused D.M.'s injury.  Because this is a Motion to Dismiss, Defendants assume, as the Court must, that Plaintiff's allegations, even though factually inaccurate, are correct.

3

establish the "affirmative action" requirement for Plaintiff's claim. *Stiles v. Grainger Cnty*, 819 F.3d 834, 854-55 (6th Cir. 2016).

### A. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 SHOULD BE DISMISSED WITH PREJUDICE.

#### 1. Plaintiff Fails to State a Claim under Section 1983 for "State Created Danger."

Plaintiff's entire argument is that Defendants failed to comply with Tenn. Code Ann. § 68-55-502 and TSSAA guidelines for addressing possible student-athlete concussions. Response p. 3-4. These alleged state law requirements do not establish a federal Constitutional right and are insufficient to support a claim under 42 U.S.C. § 1983. *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992).

In spite of the injury D.M. allegedly suffered during football practice, an injury that occurred during D.M.'s voluntary participation in a common and very popular sporting event, D.M's injury was not caused by the intentional act of anyone, let alone a state actor. Plaintiff ignores that the limited availability of the "state created danger" theory is not a substitute for state tort law. *Baker,* 443 U.S. at 146. Rather, the Supreme Court held that the Due Process Clause serves "as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195 (1989) (upholding the dismissal of a claim brought against employees of the Department of Social Services for returning a child to its home when there was evidence the child was being abused and was later abused again by its father).

##### a. A "failure to act" cannot satisfy the "affirmative action" requirement of a "state created danger" claim.

"Liability under the state-created-danger theory is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Feucht v. Triad Local Schs. Bd. of Educ.*, 425 F. Supp. 3d 914, 926-27 (S.D. Ohio

4

2019) (quoting *McQueen v. Beecher Cmty Sch.*, 433 F.3d 460, 464 (6th Cir. 2006)). "Failure to act is not an affirmative act under the state-created danger theory." *Id.* (quoting *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir. 2003)). "Even affirmatively returning a victim to a preexisting situation of danger does not create or increase the victim's risk of harm." *Stiles*, 819 F.3d at 855.

Here, Plaintiff claims that Marlow wrongfully returned D.M. to practice without having him examined by a medical professional after he reported a headache following a helmet-to-helmet collision during football practice. D.M. was never exposed to a "private act of violence." Instead, Plaintiff claims that Marlow "completely understood the intrinsically violent nature of a full-contact football practice and, by placing D.M. back in the practice after he exhibited classic symptoms of a concussion" he put "D.M. in increased risk of harm by placing him, in a more vulnerable state, back into a violent environment which was wholly created and supervised by UCHS." Response, p. 8. Plaintiff's reliance on *Davis v. Brady,* 143 F.3d 1021 (6th Cir. 1998) is misplaced and attempts to distinguish *McQueen v. Beecher Cmty. Sch*, 433 F.3d 460 (6th Cir. 2006) are without merit.

At most, Marlow returned D.M. to the same position he was in prior to sitting out for a few minutes complaining of a headache. That is far less egregious than the situation the Supreme Court found was insufficient to establish a constitutional violation in *DeShaney*. It is also far less egregious than the situation in *Bukowski v. City of Akron*, 326 F.3d 702 (6th Cir. 2003) where the court found officers retuning a mentally-disabled individual who had run away from home to a third party's home only to have the individual raped by the third party was insufficient to support a state created danger claim. *Id.* at 705-06, 709 ("the government was merely returning a person to a situation with a preexisting danger"); *see also, McQueen,* 433 F.3d at 466. The circumstances

here are not remotely similar to those in *Davis,* where the officers affirmatively put the plaintiff in a ***worse*** situation than the one in which they found him. *Davis,* 143 F.3d at 1027. At most, Marlow returned D.M. to the same situation D.M. was in before allowing him to sit out in the first place, an action that is insufficient to establish a state created danger. *Stiles*, 819 F.3d at 855; *Ryan v. City of Detroit*, 698 F. App'x 272, 283 (6th Cir. 2017).

As noted in *McQueen*, Marlow putting D.M. back into practice did not subject him to any greater danger than had Marlow not acted at all. In *McQueen*, the teacher left the room leaving five students with another student known to beat up other students and even stab them with a pencil. 433 F.3d at 462. Even though she could not anticipate the student pulling out a gun and shooting a fellow student, the teacher's actions simply did not rise to the level of an "affirmative action" that placed the plaintiff's child in a more dangerous position than the plaintiff's child would have been prior to the teacher leaving the classroom. *Id.* at 466.

Here, D.M. was in the same position after Marlow returned him to practice as he was before. What makes this case an even easier decision than *McQueen* is there are no factual allegations that D.M. was injured ***after*** Marlow allegedly returned him to practice. Unable to establish the first element of her claim, Plaintiff's claims in Court I for state created danger should be dismissed.

### b. Plaintiff is unable to establish that Defendants created a "special danger" for D.M.

Sixth Circuit case law "leave[s] little room for doubt about the [Plaintiff's] inability to satisfy the "special danger" requirement, which required it to show that "the state's actions placed [plaintiff] specifically at risk, as distinguished from a risk that affects the public at large." *Koulta v. Merciez*, 477 F.3d 442, 447 (6th Cir. 2007) (quoting *Jones v. Reynolds,* 438 F.3d 685, 690 (6th Cir. 2006)); *see also, Victory v. Rutherford Cnty. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 46525 *7-

6

8 (M.D. Tenn. March 29, 2017). Here, D.M. was in the same situation as every other player on the team participating in practice. This is not about "UCHS football players leaving the confines of the practice field and colliding head-to-head with members of the general public." Response p. 8-9. This is not a classroom of five children where one student posed a grave threat of inflicting wanton and unprovoked violence against one of the children as it was in *McQueen*. 433 F.3d at 469-70. Rather, D.M. was one of many players participating in football practice. He was not targeted for violence by any player on the field nor was he put in a position designed to expose him to a particular danger outside of any "danger" inherent in the game of football. D.M. is unable to prove that Defendants actions place him specifically at unique risk.

### c. Plaintiff is unable to prove an abuse of authority that "shocks the conscience."

In attempting to satisfy the third element of a claim for state created danger, the requisite constitutional level of culpability, Plaintiff argues that Defendants (not identifying who) acted with "deliberate indifference" because "Defendants were aware of facts that would draw the inference that a substantial risk of harm existed to D.M." by having him return to practice after complaining of a headache. Response p. 9-10.[2] Plaintiff misapplies the applicable standard and turns a negligence claim into a "fateful decision" she asserts creates a constitutional violation when it comes to kids and sports. Plaintiff's position is inconsistent with the controlling standard in the Sixth Circuit.

---

[2] Aside from D.M. telling Marlow that his "head was hurting," there are no facts to suggest D.M. was exhibiting any outward signs of a concussion (appears dazed or stunned, is confused about assignment or position, forgets an instruction, is unsure of game, score or opponent, moves clumsily, answers questions slowly, loses consciousness, even briefly, shows mood, behavior or personality changes, can't recall events prior to or after hit or fall). https://www.cdc.gov/headsup/basics/concussion_symptoms.html There are no allegations D.M. reported nausea or vomiting, balance problems or dizziness, double or blurry vision, sensitivity to light or noise, feeling sluggish, hazy, foggy or groggy, concentration or memory problems, confusion, or otherwise not "feeling right" or "feeling down." *Id.*

7

In *Doe v. Jackson Local Sch. Dist. Bd. Of Educ.*, *supra,* the Sixth Circuit recently clarified the culpability standard, noting it has two parts. Plaintiff focused exclusively on the first part, ignoring the second all together. As the *Doe* court explained:

> Our court has imported this deliberate-indifference standard into the state-created-danger context, at least when officials have "the opportunity for reflection and unhurried judgments.'" *Bukowski v. City of Akron,* 326 F.3d 702, 710 (6th Cir. 2003) (quoting *Ewolski,* 287 F.3d at 511 n.5); *cf. Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.,* 542 F.3d 529, 539-40 (6th Cir. 2008). The standard has two parts. An official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Ewolski,* 287 F.3d at 513 (quoting *Farmer,* 511 U.S. at 837). "Having drawn the inference," the official next must "act or fail to act in a manner demonstrating 'reckless or callous indifference' toward the individual's rights." *Id.* (citation omitted). Given the call for caution in this area, *Collins,* 503 U.S. at 125, our cases set demanding rules for both parts of this standard.
>
> Start with the first part: To "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *Ewolski,* 287 F.3d at 513 (citation omitted), a public official must know of more than a *general* risk of harm. The official must know of the *specific* risk that later develops. In *McQueen*, for example, a first-grade student ("John Smith") fatally shot another student ("Jane Doe") when the children's teacher, Alicia Judd, left them unsupervised. 433 F.3d at 463. Before this shooting, Smith had been "involved in several incidents where he attacked other students, sometimes beating them up and other times stabbing them with a pencil." *Id.* at 462. Doe's mother sued Judd and alleged that she "knew that Smith might violently assault another student" and ignored that risk by leaving him unsupervised. *Id.* at 469. But Judd's knowledge of Smith's "sometimes violent behavior" was not enough to prove that she knew that Smith posed a risk of gun violence. *Id.* (citation omitted). Judd had no notice that Smith "would escalate from hitting with fists, feet, and pencils" to shooting with guns. *Id.* at 470; *see also Range v. Douglas,* 763 F.3d 573, 591 (6th Cir. 2014).
>
> Turn to the second part: To act with "reckless or callous indifference," *Ewolski,* 287 F.3d at 513 (citation omitted), a public official must do more than be aware of "a substantial risk of serious harm," *Hunt,* 542 F.3d at 543. The official's response to that harm must also be "conscience shocking." *Schroder [v. City of Fort Thomas],* 412 F.3d [724,] 731 [(6th Cir. 2005)]. And if the official chooses a response motivated by a "legitimate governmental purpose," this element will generally be absent. *Hunt,* 542 F.3d at 542.

*Doe*, 954 F.3d at 933-34. By way of example, the court explained that even knowing the risk a street's speed limit posed for deadly accidents following multiple complaints, the city was not

"deliberately indifferent" to the risks even when a small child was tragically killed by a speeding driver on that same stretch of road. *Id.* (citing *Schroder v. City of Fort* Thomas, 412 F.3d 724, 729-31 (6th Cir. 2005)). Plaintiff's allegations fall far short of this demanding standard.

Plaintiff asserts that information on the dangers and risks associated with possible concussions was so prevalent, that Marlow should have known that putting D.M. back into practice after he complained of a headache following a helmet-to-helmet collision earlier in practice was so obvious that it can only be described as "deliberate indifference" because it subjected D.M. "to an unreasonably elevated risk of harm." Response p. 10-12. Yet, there are no allegations to remotely suggest that Marlow putting D.M. back into practice could have foreseen the actual injury D.M. experienced, an injury it appears from the Complaint occurred prior to Marlow putting him back into practice. Returning a student to football practice is far less egregious than the facts in *McQueen* as explained in *Doe* above. The facts here are far less egregious than those before the Supreme Court in *DeShaney* (state child welfare officers returned a child to his father in spite of serious concerns that father was abusing the child) 489 U.S. at 197-98, and those before the Sixth Circuit in *Bukowski* (officers returned a mentally-disabled individual to a home of a third party only to have the individual raped by that third party). 326 F.3d at 709. As the court in *Doe* held, "a substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass." 954 F.3d at 934 (quoting *Schroder v. City of Ft. Thomas*, 412 F.3d 724, 729 (6th Cir. 2005)).

Nothing in the facts alleged in the Complaint or posited by Plaintiff in her Response suggests Marlow or any defendant's actions "shocked the conscious" or was done with "callous indifference" to D.M.'s rights. No representative of the Board and none of the Individual Defendants inflicted any harm or injury on D.M. No third party intentionally caused him harm.

9

He was injured while participating in football practice, a "legitimate governmental purpose." There are no allegations to suggest Marlow or any other Individual Defendant (knowing that Brown and Carter were not even at the practice in question and have no direct involvement with the football team) could have foreseen the seriousness of D.M.'s injury prior to him allegedly being asked to "get back out there." "While harm to [D.M.] as a football player may have been foreseeable as Plaintiff argues, mere negligence does not meet the deliberate indifference requirement. Moreover, even if a sports injury was foreseeable, a resulting constitutional violation was not." *Victory*, 2017 U.S. Dist. LEXIS 46525 at *5-6.

There being no cases remotely analogous cases in the Sixth Circuit, Plaintiff points to *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165 (3rd Cir. 2017). Of course, the Third Circuit's decision in *Mann* does not create "clearly established law" in the Sixth Circuit. Further, the only court outside the Third Circuit to even reference *Mann* did so to reject *Mann*. *Smith*, 2019 U.S. Dist. LEXIS 108845 at *21. In rejecting the *Mann* analysis, the *Smith* court noted, "in this [Fourth] Circuit, the Court of Appeals has expressly cautioned against extending the state-created danger theory to playgrounds, sports team practices, and field trips. Thus, the Court finds the case law of jurisdictions that dismissed analogous claims more aligned with Fourth Circuit guidance." *Id.* at *23 (citing *Waybright v. Fredrick Cty, Md,* 528 F.3d 199, 208 (4th Cir. 2008)). Indeed, Plaintiff fails to cite a single Sixth Circuit case where any school district or school official was found to have created a state create danger to support a claim under Section 1983.

*Mann* is both legally distinguishable from controlling Sixth Circuit case law and factually distinguishable from the facts here. Initially, the *Mann* court did not apply the culpability standard articulated in *Doe* and applied a "deliberate indifference" standard well below that articulated in *Doe.* 872 F.3d at 171-72. In *Mann,* the coach spoke with a player after he was involved with a

10

significant hit during football practice, after which the player was seen rolling his shoulder but also "looked as though he was dizzy and was stumbling around the field." 872 F.3d at 169. The coach did not pull the player from practice but let him remain until he was again involved with another significant collision during practice, a hit the player described as "hardest hit he received in playing football." *Id.* *Mann* is the one and only court to find a constitutional violation when a student-athlete remains in practice after a possible concussion. *Id.* at 172.[3]

Not only has no court in the Sixth Circuit even addressed *Mann* but based on the cases cited herein and in Defendants' Initial Brief, the Sixth Circuit has not found any circumstances even remotely similar as constituting a constitutional violation. As noted above, the Fourth Circuit has expressly rejected the Third Circuit's holding. The Supreme Court has "said many times, [the Due Process Clause of the Fourteenth Amendment] does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202; *see also Collins*, 503 U.S. at 126-128 (failure to inform state employee of dangerous conditions that lead to the plaintiff's death was not a constitutional violation); *Victory*, 2017 U.S. Dist. LEXIS 46525 *8-9 (quoting *Reeves by Jones v. Besonen*, 754 F. Supp. 1135, 1140 (E.D. Mich. 1991)) ("Accepting Plaintiff's argument would evaporate 'any practical distinction between ordinary state-law negligence claims and federal constitutional violations, so long as the negligent party was acting under the color of state law").

Plaintiff's allegations fall far short of meeting the heightened "shock the conscience"

---

[3] *Mann* then held that the coach was entitled to qualified immunity because the law in this area was not clearly established when the injury occurred. 872 F.3d at 174 (holding that at the time of the injury "it was not so plainly obvious that requiring a student-athlete, fully clothed in protective gear, to continue to participate in practice after sustaining a violent hit and exhibiting concussion symptoms implicated the student athlete's constitutional rights"). The court also upheld dismissal of the plaintiff's claim against the school district based on a failure to train theory. *Id.* at 175.

11

standard required in the Sixth Circuit to support a claim for state created danger. The extent of D.M.'s injuries, while certainly heart-wrenching, do not make Marlow's alleged decision to have D.M. continue participating in practice after he complained of a headache so egregious as to "shock the conscience" or show a wanton disregard for D.M.'s safety. Count I of Plaintiff's Complaint should be dismissed with prejudice.

**2. Plaintiff's Claim in Count II under Section 1983 for Interference with her Parental Rights Should be Dismissed with Prejudice.**

**a. Plaintiff's claim in Count II is barred by the applicable statute of limitations.**

As set out in Defendant's Motion to Dismiss, Plaintiff's claims were filed more than a year after they accrued, thus falling outside the one-year applicable statute of limitations for her claims in Count II of her Complaint. While Plaintiff references the Tennessee Supreme Court's orders extending the state statute of limitations due to the pandemic, orders attached to Defendant's Initial Brief, those orders do not alter or extend the federal statute of limitations applicable to Section 1983 claims. Defendants' position on the statute of limitations is fully set out in its Initial Brief.

**b. Plaintiff fails to state a claim upon which relief may be granted in Count II.**

Plaintiff's position is that Defendants interfered with her "private family life" or her "constitutional right to make medical decisions for her son" when Marlow alleged told D.M. to "get back out there" without first obtaining her permission. Response p. 14-15. While Plaintiff faults Marlow for his direction to D.M. and the other Defendants for supposedly not doing enough to train coaches, Plaintiff fails to identify any legal source to support her claim under the facts of this case. The reason is simple, the Sixth Circuit does not recognize a "substantive due process claim for deprivation of [a student's parents'] familial association with their child." *Feucht*, 425 F. Supp. 3d at 923 (citing *Foos v. City of* Delaware, 492 F. App'x 582, 592-93 (6th Cir. 2012)). Indeed, the Sixth Circuit has declined to recognize a claim of familial interference under Section

1983 absent allegations a state actor actually killed the child of the plaintiff parent. *Id.* Accordingly, the *Feucht* court dismissed a parental claim under Section 1983 for familial interference when the school failed to stop the bullying of the plaintiffs' daughter who later committed suicide. *Id.* In dismissing the companion state created danger claim, the court held that placing the daughter at the same table in class with the bully did not rise to the level of culpability to support a claim under that theory either. *Id.* at 928.

No court in the Sixth Circuit has held that a coach's failure to inform a child's parent of an injury before allowing the child to continue participating in an extra-curricular activity violates the parent's constitutional rights. At most, Plaintiff's claim is that the school failed to inform her of D.M.'s headache, a failure that does not established a claim under Section 1983 as a matter of law. *See Stiles,* 819 F.3d at 855. Plaintiff's claims in Count II should be dismissed with prejudice.

### 3. The Individual Defendants are Entitled to Qualified Immunity.

In her response, Plaintiff acknowledges that the Individual Defendants are entitled to qualified immunity unless she can establish that they violated D.M's or Plaintiff's ***constitutional*** rights and that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violated that right." Response p. 16 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) and citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)). Plaintiff does not cite a single court opinion from the Sixth Circuit that has found a school official responsible for violation of a student's or parent's constitutional rights under a remotely analogous circumstance. That alone warrants dismissal on the basis of qualified immunity.

Plaintiff relies on the Third Circuit's opinion in *Mann* and a Tennessee State statute (not a federal statute that is required to support a Section 1983 claim) to argue that Defendants were on notice that failing to remove a student from football practice after he complains of a headache

13

following a helmet-to-helmet collision violates the Due Process Clause of the Fourteenth Amendment. Response p. 17. Plaintiff's argument is entirely misplaced.

First, the Third Circuit's opinion in *Mann*, which is not even cited by any Sixth Circuit court, does not clearly establish the law for coaches in East Tennessee. *Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998) (quoting *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992)). The Third Circuit's opinion does not rely on a single opinion from the Sixth Circuit or any district court from the Sixth Circuit. There is no way for the *Mann* opinion "to be so clearly foreshadowed by applicable direct authority [from the Sixth Circuit] as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.* (quoting *Cagle*, 957 F.2d at 1348). Just as the *Mann* court itself held with respect to the coach involved in that case, the Individual Defendants are entitled to qualified immunity. *Mann*, 872 F.3d at 174.

Plaintiff further asserts that a parent has a clear "constitutional right to direct the medical care of her child." Response p. 17. There is not a single case that holds that a parent's constitutional rights are violated if a school district fails to train its coaches or a coach makes a decision to continue to play a student after exhibiting signs of a possible concussion. Even *Mann* does not stand for that proposition. Additionally, Tenn. Code Ann. § 68-55-502 does not suggest this conclusion. All the statute provides is that a "youth athlete who shows signs, symptoms and behaviors consistent with a concussion from the activity or competition" is to be removed "for evaluation by a licensed health care professional, if available, and, if not, by the coach or other designated person." Tenn. Code Ann. § 68-55-502(b)(F). The statute gives the coach the authority to make a determination on return to play and says nothing about the coach being required to first obtain parental permission before making that decision.

Plaintiff is unable to establish a violation of her or D.M.'s constitutional rights and she is unable to establish that "the right is so 'clearly established' that a 'reasonable official would understand that what he is doing violates that right.'" *Summar*, 157 F.3d at 1058 (quoting *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996)). Accordingly, Plaintiff's claims in Counts I and II against the Individual Defendants should be dismissed with prejudice.

**4. Plaintiff Fails to State a Claim for Municipal Liability.**

Plaintiff asserts that the Board ignored Tennessee statutory requirements and TSSAA requirements by failing to enact any policy on the issue of student athlete concussions and failed to provide training to its coaches, a failure that infringed on D.M. and Plaintiff's constitutional rights when D.M., "as an injured student-athlete, was required to reenter the full-contact football practice without first receiving proper and appropriate medical treatment." Response p. 18-19. Plaintiff claims that the Board's failures were so egregious that the alleged constitutional violations were "unavoidable." Response p. 19. Not only do the factual allegations in the Complaint not support such a conclusion, but Plaintiff fails to explain how, under the facts as alleged, proper training would have avoided D.M.'s injury that is only alleged to have occurred during a single helmet-to-helmet collision ***prior*** to Marlow allegedly returning D.M. to practice.

To establish her claim, the Board's alleged "failure to train must amount to deliberate indifference to the legal rights of persons with whom the employees come into contact." *M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 74270 *44 (N.D. Ohio April 28, 2020) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To make such a showing, "[e]vidence of a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. Without notice that training is deficient in a particular respect, the decision-makers cannot be found to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *H.M. v. Bd of*

15

*Educ. of the Kings Local Sch. Dist.*, 117 F. Supp. 3d 992 (S.D. Ohio 2015)). Even if Plaintiff's allegations are sufficient to show for purposes of a motion to dismiss that the Board completely failed to comply with Tenn Code Ann. § 68-55-502 and TSSAA guidelines on student-athlete concussion protocols, that does not establish a constitutional violation as there is no evidence that this alleged failure to train resulted in a pattern of constitutional violations. Counts I and II should be dismissed with prejudice.

### B. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO IMMUNITY FROM PLAINTIFF'S STATE LAW NEGLIGENCE CLAIMS.

With regard to the state law negligence claims, Plaintiff does not dispute that the only claim that may be brought against the Board for negligence is under the TGTLA. Further, while conceding that no claims may be brought against the Individual Defendants as school employees based on their immunity provided under the TGTLA, Plaintiff asserts that her negligence claims against the Individual Defendants are asserted "in the alternative" in the event the facts show the Individual Defendants were not acting within the course and scope of their employment with the Board. Response p. 20-21. There are no facts, however, to suggest the Individual Defendants were acting outside the course and scope of their employment at any time during the allegations in the Complaint. The Defendants deny the validity of the allegations, but do not deny that the Individual Defendants were employees of the Board during the events alleged in the Complaint. Carter's actions concern only his actions (or rather alleged inactions) as Director of Schools. Brown's actions concern only his actions (or rather alleged inactions) as Athletic Director. Kerr's actions concern only his actions (or rather alleged inactions) as Head Football Coach for the Union County High School Football Team. Marlow's actions concern only his actions as an Assistant Football Coach for the Union County High School Football Team. There is no basis for the alternative theory to avoid the Individual Defendants' immunity under state law and force them to

defend against claims the state has clearly stated may not be brought against them in their individual capacities. Counts III, IV, and V should be dismissed as against them with prejudice.

The only valid claim, even though the merits are very much in dispute, is the claim of negligence against the Board under the TGTLA. That claim (Count V) should be dismissed without prejudice to be refiled in state court while all other claims should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth herein and in their Brief in Support of Their Motion to Dismiss, Defendants Union County Board of Education, James E. Carter, Shane Brown, Larry Kerr, and Derek Marlow request the Court dismiss Plaintiff's claims in Counts I, II, III, and IV with prejudice, dismiss Count V against Defendants Carter, Brown, Kerr and Marlow with prejudice and dismiss Count V against the Board without prejudice to be refiled in State Court.

Respectfully submitted this 28th day of September, 2020.

>/s/ Edward H. Trent
Edward H. Trent, BPR # 030045
etrent@wimberlylawson.com
Mary Moffatt BPR # 012729
MMoffatt@wimbelrylawson.com
Wimberly Lawson Wright Daves & Jones PLLC
550 W. Main Ave, Suite 900
Knoxville, TN  37902
(865) 564-1000  Telephone
(865) 546-1001  Facsimile

*Attorneys for Defendants Union County Board of Education, James E. Carter, Larry Kerr, Derek Marlow, and Shane Brown*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief in Support of Defendants Motion to Dismiss Plaintiff's Complaint was filed with the Court using the CM/ECF system this 28th day of September, 2020, which will provide copies to all parties of record.

<em>/s/ Edward H. Trent</em><br>
Edward H. Trent